## ABBOTT *v.* OSGOOD.

At common law, the discharge of a debtor from imprisonment upon an execution, by the creditor, although made upon the express condition that the debt and judgment should not thereby be discharged, operated to discharge that debt and judgment.

By statute, in this State, the common law rule is abolished, and under the provisions of the statute, no discharge of a debtor from imprisonment on an execution here, by the creditor or otherwise, operates to discharge the debt or the judgment on which the execution issued.

DEBT, upon a judgment rendered in the Court of Common Pleas for this county, March term, 1857.

The defendant pleaded that an execution had issued upon said judgment, and thereupon the defendant had been arrested and committed to jail, and that afterward the plaintiffs voluntarily discharged the defendant from confinement, and he was suffered to go at large.

The plaintiffs replied to this, that said discharge, and suffering the defendant to go at large, were on the express condition that the debt and judgment aforesaid should not be discharged.

To this replication the defendant demurred, and the plaintiffs joined in the demurrer.

Abbott *v.* Osgood.

*Minot & Mugridge,* for the defendant.

*Flint & Bryant,* for the plaintiffs.

FOWLER, J.    It is admitted by the demurrer in this case, that the defendant was discharged by the plaintiffs from imprisonment on an execution issued upon the judgment now in suit, upon the express condition that the debt in said judgment and the judgment itself should not thereby be discharged.    The plaintiffs contend, that, at common law, a discharge under such circumstances would not invalidate the debt or judgment, and have referred us to the cases of *Vigers* v. *Aldrich,* 4 Burr. 2482, and *Little* v. *Newburyport Bank,* 14 Mass. 443, as sustaining their position.    An examination of these cases has failed to satisfy us of its correctness.

In *Vigers* v. *Aldrich,* which was debt upon a judgment where the debtor had, as in the present case, been discharged out of custody by the consent of the creditor, *Ashhurst,* for the defendant, argued that the defendant, having been once taken in execution upon the judgment, and afterwards discharged of the execution against his person, by consent of the plaintiff, could not be liable to any further execution upon it, nor could the plaintiff bring an action of debt upon that same judgment, which had been already so carried into execution, and the defendant so discharged from it.    The court were clear with Mr. *Ashhurst* on both points, holding expressly that the plaintiff could not bring an action upon the judgment after the defendant had been taken in execution and discharged by the plaintiff's own consent.

So in *Little* v. *Newburyport Bank,* which was an action to recover damages for an alleged false imprisonment, where the plaintiff, having been arrested on an execution in favor of the defendants, was discharged by them from prison, upon condition that he should return again to the

prison if the debt were not paid by a particular day, and, the debt not having been paid, the plaintiff returned to prison in compliance with the condition, the court held that the discharge, having been for the benefit and at the request of the plaintiff, under an agreement which he had voluntarily executed, he could not complain, although, but for his own voluntary surrender of himself, he could not have been again imprisoned upon the execution. They added that "all the · authorities tend to establish one principle, which we do not question, viz.: that where a judgment debtor has been taken in execution, and discharged by the creditor's consent, he cannot be again taken upon that execution, or upon any other issuing upon that judgment; the arrest of the debtor upon execution, by order of the creditor, being considered even as a satisfaction at the common law. The cases of fraud and of escape, however, are exceptions. So, we apprehend, is the case of a temporary or conditional liberation, under a promise to return if the terms are not complied with, and an actual return into custody, in pursuance of such agreement. The authorities cited prove that the debtor cannot be taken, even in such circumstances."

In *Jaques* v. *Withy*, 1 D. & E. 552, where a prisoner in execution had been discharged by consent of the creditor, upon giving fresh security to satisfy the judgment, and that security was afterwards defeated on account of a mere informality, it was held that the judgment was satisfied by the arrest and discharge, and was not available as an off-set against a demand of the debtor against the creditor.

In *Clarke* v. *Clement & English*, 6 D. & E. 525, the same doctrine was reaffirmed; and the same principle was distinctly recognized in *Bassett* v. *Salter*, 2 Mod. 136. In *Thompson* v. *Bristow*, Barnes' Notes 205, the court held that an agreement of the debtor, on his being discharged out of custody with the creditor's consent, that the judgment should be revived, was null and void.

Abbott *v.* Osgood.

So, in *Tanner* v. *Hague*, 7 D. & E. 420, it was held that if a creditor consent to a debtor's being discharged out of execution on his undertaking to pay at a future day, the creditor cannot afterwards sue out any execution on that judgment, in the event of the debtor's not fulfilling his undertaking—the court saying that all the cases proceeded on the ground that the creditor received a satisfaction of his debt in law by having his debtor once in custody on execution. Substantially to the same point are *Da Coster* v. *Davis*, 1 B. & P. 242, and *Perkins* v. *Pettit & Yale*, 2 B. & P. 440.

In *Blackburn* v. *Stupart*, 2 East 243, the debtor was taken in execution, at the suit of the creditor, on the 31st of March, 1798, and remained in the custody of the sheriff's officer until the 4th of April following, when he was discharged on an express understanding that he would pay half the debt and costs then, and the other half in three months thereafter; and that the judgment should stand in force as a security for the payment in three months; and if the money was not paid in that time the judgment should be enforced by execution against his person and goods for the amount, and the costs incident thereto. The debtor having made default in the payment, as stipulated, was re-arrested for the balance of the debt remaining unpaid, and the costs, long after the expiration of the three months, and to obtain his discharge paid the amount. He afterwards moved the court for a rule to set aside the execution, and compel the sheriff's officer to refund the money, which was granted; the court remarking, that although the debtor's conduct had been very scandalous, it would be very dangerous to permit the law to be unsettled in this respect.

Upon the whole, therefore, we entertain no doubt that, at common law, the discharge of a debtor from imprisonment upon execution, by consent of the creditor, unless obtained by fraud or force, was in law a satisfaction of the debt and judgment, so that no action could afterwards

be maintained upon the judgment for the recovery of the debt.

But the plaintiffs further rely upon the express provisions of the Revised Statutes, to enable them to maintain their action, notwithstanding the established rule of the common law ; and we think rightly. The eleventh section of the 185th chapter of those statutes is as follows :

" Sec. 11. No such discharge," [that is, a discharge by two justices of the peace, one of whom is of the quorum, or by the court, at the return day of a writ or execution, as provided for in the two preceding sections,] "nor any discharge of any person arrested or imprisoned on execution, shall discharge the debt or judgment upon which the execution issued."

This is clearly a direct and positive enactment, designed and intended to abolish and change the common law rule in such cases, and it seems to us most effectually accomplishing that purpose. It is difficult to conceive what language more explicit could have been employed to effect such a result. It is, as it were, expressly and definitely enacted that after the passage of that act, the common law rule which had previously existed in regard to discharges by consent of the creditor, should no longer prevail, but that thereafterwards no discharge of any person arrested or imprisoned on execution, whether obtained by consent of the creditor or otherwise, should operate to discharge the debt or judgment upon which the execution issued.

It has been suggested by the defendant's counsel, that a change made by the legislature in the draft of the Revised Statutes, as originally reported by the commissioners, shows that they could not have intended, by the language of this section as it now stands, to include more than discharges according to other provisions of the statutes, such as by giving gaol bonds, or by neglect to levy execution in thirty days after judgment, or failure of the creditor to give bond for payment of prison charges, or upon taking the

poor debtor's oath ; and that discharges by the voluntary assent of the creditor are excluded.   Upon reference to the report of the commissioners, we find this section to have been reported by them in these words :

" SEC. 11.  No such discharge, nor any discharge of any person arrested or imprisoned on execution, by the creditor, shall discharge the debt or judgment upon which the execution issued."

The legislature, before adopting it, struck out the words, " *by the creditor*," and their action in so doing, so far from indicating to our minds any intention on their part not to include in this provision discharges by the consent of the creditor, shows most conclusively that they intended to go further, and include not only such discharges, but voluntary escapes, permitted by the indulgence, ignorance, mistakes or inattention of officers, and every other species of discharge not accompanied by and consequent upon the payment in full, or actual satisfaction in some way, of the debt or judgment to enforce which the execution issued.   It seems entirely plain to us that the purpose of the alteration which the legislature made in the commissioners' report of this section, could only have been to enlarge and not to limit and restrict the application of the principle which the commissioners recommended them to adopt.   Instead of excepting from the common law rule a single class of discharges, thus adding another to the exceptions which the statutes had already made to the rigid technicality that the arrest of the debtor's body upon execution and his subsequent discharge were a legal satisfaction of the debt, they undoubtedly determined at once to extend the principle to all cases of discharge without actual satisfaction of the debt—we think, most wisely ; for there are numerous cases in the Reports, where, in the language of the cour in *Blackburn* v. *Stupart*, before quoted, the conduct of debtors in obtaining the consent of their creditors to their

Abbott *v.* Osgood.

release from imprisonment, was not only " very scandalous," but where officers have been heavily amerced, without possibility of redress, for granting to prisoners in their custody those little indulgences which it might have seemed inhuman and almost brutal to withhold, but which were abused into voluntary escapes from imprisonment.

Such being our ideas of the probable design and only reasonable · construction of the language of the statute under consideration, there must be judgment for the plaintiffs upon the demurrer.

*Judgment for the plaintiffs.*